**DYKEMA GOSSETT LLP**
TAMARA A. BUSH, State Bar No. 197153
 *TBush@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone:   (213) 457-1800
Facsimile:    (213) 457-1850

**WHEELER TRIGG O'DONNELL LLP**
Andrew M. Unthank (*pro hac vice*)
 *unthank@wtotrial.com*
Michael T. Williams (*pro hac vice*)
 *williams@wtotrial.com*
Natalie R. Colao (*pro hac vice*)
 *colao@wtotrial.com*
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:   (303) 244-1800
Facsimile:    (303) 244-1879

Attorneys for Defendant
WHIRLPOOL CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| 1  DEBRA GOLDSTEIN, individually and on behalf of all others similarly situated, | Case No.:  2:23-cv-04752-JWH-JDE |
| 2                     Plaintiff, | Hon. John W. Holcomb |
| 3        vs. | Courtroom 9D |
| 4  WHIRLPOOL CORPORATION, a Delaware corporation | Magistrate John D. Early Courtroom 6A |
| 5                     Defendant. | |
| 6  | CLASS ACTION COMPLAINT |
| 7  | **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| 8  | |
| 9  | |
| 10  | Time of Hearing: 9 am |
| 11  | Date of Hearing: November 17, 2023 |
| 12  | Judge: Hon. John W. Holcomb |

13

14  TO THIS COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

15        PLEASE TAKE NOTICE that on November 17, 2023, or as soon thereafter as

16  the matter may be heard by the Honorable John W. Holcomb, in Courtroom 9D of the

17  United States District Court for the Central District of California, located at First

18  Street Courthouse, 411 W. 4th Street, Courtroom 9D, Santa Ana, CA 92701,

19  Defendant Whirlpool Corporation will, and hereby does, move this Court for an Order

20  dismissing Plaintiff's First Amended Class Action Complaint pursuant to Fed. R. Civ.

21  P. 12(b)(1) and (6) on the following grounds, as set forth more fully in the

22  accompanying Memorandum of Points and Authorities:

23        Defendant Whirlpool Corporation ("Whirlpool") hereby moves to dismiss the

24  entirety of Plaintiff's First Amended Class Action Complaint (ECF No. 30) pursuant

25

26

to Federal Rules of Civil Procedure 12(b)(1) for lack of standing and pursuant to Rule 12(b)(6) for failure to state a claim. In support of its motion, Whirlpool relies on is this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Andrew Unthank, and exhibits.

This motion is made following the conference of counsel pursuant to Local Rule 7-3. The parties' lead counsel met by videoconference on July 12, 2023, and first discussed the possible arguments Whirlpool might make in its contemplated motion to dismiss, including arguments similar to those raised in Plaintiff's counsel's earlier-filed cases against other manufacturers. The parties' lead counsel met again by telephone on August 4 to further discuss Whirlpool's contemplated motion to dismiss, and specifically whether Plaintiff's counsel would amend to add allegations concerning Whirlpool's corporate risk management efforts, similar to the allegations in an earlier amended pleading Plaintiff's counsel filed in the now-coordinated matter of *Hedrick v. BSH Home Appliances Corp.*, No. 8:23-cv-00358-JWH-JDE. Whirlpool filed its original motion to dismiss on August 18, 2023. On September 27, in lieu of opposing Whirlpool's original motion to dismiss, Plaintiff's counsel filed an amended pleading adding new allegations focused primarily on Whirlpool's corporate risk management efforts. On October 4, Whirlpool's counsel emailed Plaintiff's counsel to confirm that the amended pleading's substantial similarity to the original pleading allowed Whirlpool to file its renewed motion to dismiss as early as October 5 and maintain the original hearing date of November 17, 2023. The parties' lead counsel continued to correspond by email, and on October 5 Whirlpool confirmed that Plaintiff concedes her claim for breach of the implied warranty of fitness for a

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

1  particular purpose, but that she does intend to press her claim for breach of the implied

2  warranty of merchantability.

3

4  Dated: October 5, 2023                        WHEELER TRIGG O'DONNELL LLP

5                                          By:  */s/Andrew M. Unthank*

6                                                Andrew M. Unthank (*pro hac vice*)
                                                Michael T. Williams (*pro hac vice*)
7                                                Natalie R. Colao (*pro hac vice forthcoming*)

8                                                DYKEMA GOSSETT LLP

9                                                Tamara A. Bush

10                                               Attorneys for Defendant
                                                WHIRLPOOL CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                            4

26

**DYKEMA GOSSETT LLP**
TAMARA A. BUSH, State Bar No. 197153
 *TBush@dykema.com*
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone:   (213) 457-1800
Facsimile:    (213) 457-1850

**WHEELER TRIGG O'DONNELL LLP**
Andrew M. Unthank (*pro hac vice*)
 *unthank@wtotrial.com*
Michael T. Williams (*pro hac vice*)
 *williams@wtotrial.com*
Natalie R. Colao (*pro hac vice forthcoming*)
 *colao@wtotrial.com*
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:   (303) 244-1800
Facsimile:    (303) 244-1879

Attorneys for Defendant
WHIRLPOOL CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DEBRA GOLDSTEIN, individually and on behalf of all others similarly situated, | Case No.:  2:23-cv-04752-JWH-JDE |
| Plaintiff, | Hon. John W. Holcomb |
| vs. | Courtroom 9D |
| WHIRLPOOL CORPORATION, a Delaware corporation | Magistrate John D. Early |
| Defendant. | Courtroom 6A |
| | CLASS ACTION COMPLAINT |
| | **MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| | Time of Hearing:  9 am |
| | Date of Hearing: November 17, 2023 |
| | Judge: John W. Holcomb |

5

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. 8

INTRODUCTION ........................................................................... 13

PLAINTIFF'S ALLEGATIONS ........................................................ 13

ARGUMENT ................................................................................. 17

I.      MOTION TO DISMISS STANDARD ................................... 17

II.     PLAINTIFF LACKS INJURY AND STANDING ................. 17

     A.     Plaintiff Fails To Allege Any Injury ............................. 17

     B.     Plaintiff Lacks Standing To Assert Other State Laws ........ 20

III.    PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED ........ 21

     A.     The Ninth Circuit Recognizes EPCA's Express Preemption ........ 21

     B.     EPCA Preempts Plaintiff's Attempt To Regulate Natural Gas Use ........ 22

IV.     PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM FAILS ........ 24

V.      PLAINTIFF'S MISREPRESENTATION AND OMISSION CLAIMS ARE INADEQUATE ........ 25

     A.     Plaintiff Fails To Satisfy Rule 9's Heightened Pleading Standard ........ 25

     B.     Plaintiff Fails To Plead That Whirlpool Knew Of The Alleged Defect ........ 26

     C.     Plaintiff Has Not Established Whirlpool Had A Duty To Disclose ........ 29

     D.     The Economic Loss Rule Bars Plaintiff's Fraudulent Omission Claim ........ 31

     E.     Plaintiff's FAL Claim Cannot Be Based On Omission ........ 32

VI.     PLAINTIFF'S UCL CLAIM FAILS IN ITS ENTIRETY ........ 32

VII.    PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF FAIL BECAUSE THERE IS NO REAL THREAT OF REPEAT INJURY ........ 33

VIII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS FAIL ........ 33

6

CONCLUSION .......................................................................................................... 34

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

## CASES

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019)....................................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................17

*Barker v. Nestle Purina PetCare Co.*,
    601 F. Supp. 3d 464 (E.D. Mo. 2022) ..............................................21

*Bates v. United Parcel Serv., Inc.*,
    511 F. 3d 974 (9th Cir. 2007) ...........................................................33

*BCBSM, Inc. v. Walgreen Co.*,
    512 F. Supp. 3d 837 (N.D. Ill. 2021)................................................20

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ............................................................24

*Cahen v. Toyota Motor Corp.*,
    147 F. Supp. 3d 955 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ...19

*Cal. Rest. Ass'n v. City of Berkeley*,
    No. 21-16278, 2023 WL 2962921 (9th Cir. Apr. 17, 2023) .................22

*California Restaurant Association v. City of Berkley*,
    65 F.4th 1045 (9th Cir. 2023) .....................................................22, 23

*Canlas v. United States Dep't of the Treasury*,
    No. 20-cv-02470, 2020 WL 6684851 (N.D. Cal. Nov. 12, 2020) .........17

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ............................................................21

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...........................................................................17

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
    No. 16-cv-02941, 2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ..............27

*Collins v. eMachines, Inc.*,
    202 Cal.App.4th 249 (Cal. Ct. App. 2011)...........................................29

*Corcoran v. CVS Health Corp.*,

169 F. Supp. 3d 970 (N.D. Cal. 2016) ...................................................... 20

*Elyazidi v. SunTrust Bank*,
No. CIV.A. DKC 13-2204, 2014 WL 824129 (D. Md. Feb. 28, 2014), *aff'd*, 780
F.3d 227 (4th Cir. 2015) ............................................................................. 21

*Fenerjian v. Nongshim Co., Ltd*,
72 F. Supp. 3d 1058 (N.D. Cal. 2014) ....................................................... 20

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
774 N.E. 2d 1190 (N.Y. 2002) ................................................................... 21

*Gutierrez v. Carmax Auto Superstore California*,
248 Cal.Rpt.3d 61 (Cal. Ct. App. 2018) ................................................... 20

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
No. 19-cv-1345, 2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) ............... 30

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................... 32

*Hale v. Sharp Healthcare*,
108 Cal. Rptr. 3d 669 (Cal. Ct. App. 2010) .............................................. 18

*Hauck v. Advanced Micro Devices, Inc.*,
No. 18-cv-00447, 2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ............... 27

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
No. C 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)................... 19

*Hodsdon v. Mars, Inc.*,
891 F.3d 857, 861 (9th Cir. 2018) ....................................................... 29, 32

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
No. 09-MDL-2007, 2009 WL 9502003 (C.D. Cal. July 6, 2009)............. 20

*In re Arris Cable Modem Consumer Litig.*,
2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................... 25

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
483 F. Supp. 3d 838 (C.D. Cal. 2020) ................................................. 31, 32

*In re NJOY, Inc. Consumer Class Action Litig.*,
No. 14-00428, 2015 WL 12732461 (C.D. Cal. 2015)................................ 30

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
No. 16-cv-06391, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) ............ 28

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

*Jurgensen v. Felix Storch, Inc.*,
    No. 12 Civ. 1201, 2012 WL 2354247 (S.D.N.Y. June 14, 2012) ...........................22

*Kahn v. FCA US LLC*,
    No. 2:19-cv-00127, 2019 WL 3955386 (C.D. Cal. Aug. 2, 2019).........................30

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...............................................................................25

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..................................................................................15

*Kwikset Corp. v. Superior Court*,
    120 Cal. Rptr. 3d 741 (Cal. 2011) ..........................................................................18

*Lusson v. Apple, Inc.*,
    No. 16-cv-00705, 2016 WL 10932723  (N.D. Cal. June 20, 2016...........................33

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ..................................................................................18

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634, 200 P.3d 295 (Cal. 2009) .............................................................18

*Milman v. FCA U.S., LLC*,
    No. SACV 18-00686, 2018 WL 5867481  (C.D. Cal. Aug. 30, 2018) ..................30

*Mocek v. Alfa Leisure, Inc.*,
    114 Cal. App. 4th 402 (Cal. Ct. App. 2003)...........................................................24

*North American Chemical Co. v. Superior Court*,
    59 Cal.App.4th 764 (1997) .....................................................................................32

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)................................................................................................33

*Papasan v. Dometic Corp.*,
    No. 16-CV-02117-HSG, 2017 WL 4865602 (N.D. Cal. Oct. 27, 2017) ...............19

*Peterson v. Wells Fargo Bank, N.A.*,
    No. 3:20-CV-781, 2022 WL 972415 (D. Conn. Mar. 31, 2022)............................20

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018)..30

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)................................................................................................18

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010)............................................................24, 31

*Troup v. Toyota Motor Corp.*,
    545 Fed. App'x 668 (9th Cir. 2013) ........................................................................24

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................25

*White v. FCA US LLC*,
    No. 22-CV-00954-BLF, 2022 WL 3370791 (N.D. Cal. Aug. 16, 2022)...............20

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................................26

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ..........................................................................27, 29

*Wilson v. Hyundai Motor Am.*,
    No. 822CV00771, 2023 WL 3025376 (C.D. Cal. Mar. 14, 2023).........................27

## REGULATIONS

42 U.S.C. §§ 6291–6309.............................................................................21, 22, 23

Bus. & Prof. Code § 17204 ...........................................................................................18

Cal. Bus. & Prof. Code § 17535 ...................................................................................18

Cal. Bus. & Prof. Code §17500 ....................................................................................32

## OTHER AUTHORITIES

Breanne Deppisch, *What to know about the study behind the push to ban gas stoves*,
    Washington Examiner (Jan. 13, 2013) ....................................................................16

EPA, Report of the Clean Air Scientific Advisory Committee, Review of the US
    CPSC Health Effects and Exposure Assessment Documents on Nitrogen Dioxide,
    at 5 (May 9, 1986) ..................................................................................................14

Gary Wong et. al., *Cooking fuels and prevalence of asthma: a global analysis of
    phase three of the International Study of Asthma and Allergies in Childhood
    (ISAAC)*, 1 Lancet Respir. Med., 386 (May 31, 2013)...........................................15

Hansel NN, et. al., 116 Environ Health Perspect. 1428-32 (Oct. 2008) .....................16

Janet Raloff, *Cleaner Cooking with Gas*, 125 Science News, 28, 28 (Jan. 14, 1984) .23

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

Maxine Joselow, "*Gas stove pollution causes 12.7% of childhood asthma, study finds*," Washington Post (Jan. 6, 2023) ................................................................. 16

Nigel Bruce et. al., WHO Indoor Air Quality Guidelines: Household Fuel Combustion Review 4: health effects of household air pollution (HAP) exposure4 (2014) . 15, 31

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

1

**<u>INTRODUCTION</u>**

2         Plaintiff's counsel seeks to hold the entire gas cooking appliance industry

3   liable—with cases against Whirlpool, Bosch and Samsung in this District, and against

4   GE and Wolf elsewhere—based on speculative health risks amplified and

5   misrepresented in the media. None of the sources Plaintiff alleges establishes any

6   causal link between gas stove use and respiratory issues. At best, they show decades-

7   old inconsistency over whether there is even a narrow association between gas stove

8   emissions and childhood asthma.

9         On this basis, Plaintiff alleges Whirlpool was duty-bound to her and all other

10  gas stove purchasers to disclose that products like theirs may present these unproven

11  health risks. She alleges that with such disclosures, she would have paid less for her

12  gas stove or purchased an electric stove instead. She also demands that Whirlpool and

13  other manufacturers redesign their products or provide warnings to reduce gas use

14  overall. But Plaintiff's own allegations, accepted as true, show that this duty of

15  disclosure and her other demands rest solely on speculation and cannot form the basis

16  of her claims.

17        For these and the additional reasons that follow—federal preemption among

18  them—Plaintiff's claims must be dismissed.

19

**<u>PLAINTIFF'S ALLEGATIONS</u>**

20        Plaintiff alleges that around September 2022 she bought a KitchenAid-brand

21  gas stove from Lowe's in Woodland Hills, California. (First Am. Comp.

22  ("FAC") ¶ 46.) Plaintiff does not allege that her stove ever malfunctioned or that it

23  operates differently than any other modern gas stove. (*Id.* ¶¶ 46-53.) Plaintiff alleges

24  she has "respiratory issues" and "has been prescribed two inhalers." (*Id.* ¶ 48.) She

25

26

alleges those issues make her "particularly vulnerable to the concentration of NO₂ in the home from gas stoves." (*Id.*) She uses her gas stove approximately twice a day for a total of 35-55 minutes thereby exposing herself "to a health-harming concentrating [sic] of pollutants, especially nitrogen dioxide." (*Id.*)

Plaintiff does not allege what level of pollutants her stove produces or what level she considers safe. She also does not allege her stove caused her respiratory issues or that those issues worsened due to her gas stove use. Instead, the crux of her pleading focuses on the potential for childhood asthma from nitrogen dioxide (NO₂ or NOx) emissions. (*Id.* ¶¶ 16-23, 26-28.) Plaintiff cites numerous news articles and some health studies in an effort to generate the appearance that it is well-established that gas stove emissions pose known and unreasonable health hazards. The substance of the actual health studies, however, shows otherwise. Indeed, none of the sources Plaintiff cites are specific to Whirlpool's gas stoves, or even to the modern era of North American gas cooking appliances her counsel sweeps into these industry-wide putative classes.

Setting aside their relevance to the specific products Plaintiff seeks to indict, Plaintiff's sources do not even establish that gas stoves ***cause*** adverse health effects. At best, these sources show the degree to which gas stove emissions are even ***associated*** with adverse health effects remains unclear. For example, Plaintiff references a Clean Air Scientific Advisory Committee report to the EPA concluding that controlled exposure studies regarding NO₂ "have reported ***inconsistent findings*** regarding the health effects of these exposures." *See* EPA, Report of the Clean Air Scientific Advisory Committee, Review of the US CPSC Health Effects and Exposure Assessment Documents on Nitrogen Dioxide, at 5 (May 9, 1986) (Decl. Ex. A, cited

1   at FAC ¶ 27 n.29) (emphasis added).[1]

2          Plaintiff further cites a 2014 Report from the World Health Organization where

3   the "main findings" provide that "evidence for a relationship between gas cooking

4   (and indoor $NO_2$) and asthma prevalence or asthma symptoms was ***inconsistent***" and

5   that "the current evidence was ***insufficient to support causality***." Nigel Bruce et. al.,

6   WHO Indoor Air Quality Guidelines: Household Fuel Combustion Review 4: health

7   effects of household air pollution (HAP) exposure, at 74 (2014) (Decl. Ex. B, cited at

8   FAC ¶ 21 n.20) ("WHO Report") (emphasis added). Another source she cites

9   references a 2013 study that collected data from "over 500,000 primary and secondary

10  school children" across 47 countries and found "***No evidence of an association***

11  ***between the use of gas as a cooking fuel and either asthma symptoms or asthma***

12  ***diagnosis was reported in either age group***." *See* WHO Report at 29 (discussing Gary

13  Wong et. al., *Cooking fuels and prevalence of asthma: a global analysis of phase*

14  *three of the International Study of Asthma and Allergies in Childhood (ISAAC)*, 1

15  Lancet Respir. Med., 386 (May 31, 2013) (Decl. Ex. C)) (emphasis added).

16         Faced with criticism about these inconclusive and inconsistent sources in

17  Whirlpool's original Motion to Dismiss, Plaintiff's amended pleading features one

18  additional study of asthmatic children, (FAC ¶ 22 & n.23), which similarly explains:

19

20         [1] The sources that Plaintiff hyperlinks to and relies on in the Amended
21  Complaint as the basis for her allegations that gas stoves emissions are harmful to
    health and unsafe, should be treated as incorporated by reference into the Amended
    Complaint, because these sources form the basis for Plaintiff's claims. *Khoja v.*
22  *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "[I]incorporation-
    by-reference is a judicially created doctrine that treats certain documents as though
23  they are part of the complaint itself. The doctrine prevents plaintiffs from selecting
    only portions of documents that support their claims, while omitting portions of those
24  very documents that weaken—or doom—their claims." *Id*. These sources are attached
    as exhibits to the Declaration of Andrew Unthank ("Decl.").

25

26

***Current evidence has not yet convincingly demonstrated that high***
***indoor NO2 concentrations contribute to the risk of developing asthma***,
because NO2 concentrations are similar in homes of children with and
without asthma. . . .

Hansel NN, et. al., *A longitudinal study of indoor nitrogen dioxide levels and respiratory symptoms in inner-city children with asthma*. 116 Environ Health Perspect. 1428-32 (Oct. 2008) (Decl. Ex. D, cited at ¶ 22 & n.23) (emphasis added). Plaintiff now alleges Whirlpool "monitors and keeps track of" this information "as part of its risk management process." (FAC ¶¶ 29-30.)

Finally, Plaintiff's amended pleading advances the new theory that, "In late 2022 and early 2023, a flood of media articles reported the potential health risks from gas stoves," and "[a]s a result, demand for gas stoves has dropped." (FAC ¶41.) Plaintiff does not allege any actual instances of reduced gas stove production or sales volumes or even price reductions. Moreover, this "flood" included outright misrepresentations. For example, the Washington Post summarized a late-2022 research paper with the sensational headline: "**Gas Stove Pollution Causes 12.7% of Childhood Asthma**."[2] The lead author of that paper later clarified that it "***does not assume or estimate any causal relationship***."[3]

On this basis, Plaintiff asserts that Whirlpool was duty-bound to disclose this information and should be held liable for not warning its customers of these unproven and speculative health risks associated with the use of its fully-functioning gas stoves.

---

[2] Maxine Joselow, "*Gas stove pollution causes 12.7% of childhood asthma, study finds*," Washington Post (Jan. 6, 2023), Decl. Ex. E (emphasis in original).
[3] *See* Breanne Deppisch, What to know about the study behind the push to ban gas stoves, Washington Examiner (Jan. 13, 2013), Decl. Ex. F (emphasis added).

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

(FAC ¶¶ 2, 24-43.)

<u>**ARGUMENT**</u>

## I.   <u>MOTION TO DISMISS STANDARD</u>

To survive a motion to dismiss, a complaint must allege sufficient facts to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Canlas v. United States Dep't of the Treasury*, No. 20-cv-02470, 2020 WL 6684851, at *1 (N.D. Cal. Nov. 12, 2020).

## II.   <u>PLAINTIFF LACKS INJURY AND STANDING</u>

Plaintiff's claims should be dismissed for lack of standing for two primary reasons. First, Plaintiff fails to plausibly allege that she has suffered an actual or certain injury. Plaintiff thus lacks Article III and statutory standing to bring her claims. Second, Plaintiff lacks standing to bring claims under state statutes that have no connection to this dispute. These failings are equally fatal to her statutory and common law claims that require she plead the necessary element of damages.

### A.   **Plaintiff Fails To Allege Any Injury**

Plaintiff's claims should be dismissed in their entirety because she has not plausibly alleged an injury in fact as required to establish Article III standing and statutory standing under the UCL, CLRA, and FAL. "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and citation omitted). Plaintiff must show "the threatened injury is 'certainly impending,' or there is a

1   'substantial risk that the harm will occur.'" *McGee v. S-L Snacks Nat'l,* 982 F.3d 700,

2   709 (9th Cir. 2020) (*quoting Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158

3   (2014)).

4        The UCL, CLRA, and FAL likewise require a plaintiff to show injury in fact—

5   economic harm as pled—to have statutory standing to bring a claim. See *Hale v.*

6   *Sharp Healthcare*, 108 Cal. Rptr. 3d 669, 676 (Cal. Ct. App. 2010) ("[A] private

7   person has standing to bring a UCL action only if he or she 'has suffered injury in

8   fact and has lost money or property as a result of the unfair competition.'") (quoting

9   Bus. & Prof. Code § 17204); *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 641,

10  200 P.3d 295, 299 (Cal. 2009) ("[T]o bring a CLRA action, not only must a consumer

11  be exposed to an unlawful practice, but some kind of damage must result."); *id.* at

12  299-301 (rejecting argument that consumer had statutory standing to bring CLRA

13  claim based on contract's inclusion of allegedly unlawful provision where it was

14  speculative whether provisions would be applied against plaintiff); *Kwikset Corp. v.*

15  *Superior Court*, 120 Cal. Rptr. 3d 741, 750 (Cal. 2011) ("[U]nder the false advertising

16  law . . . standing extends to 'any person who has suffered injury in fact and has lost

17  money or property as a result of a violation of this chapter.'") (quoting Cal. Bus. &

18  Prof. Code § 17535).

19       Plaintiff's allegations fall short of this standard and she therefore lacks

20  standing. Plaintiff alleges she overpaid for her gas stove because Whirlpool did not

21  disclose the risk of suffering adverse respiratory effects from NOx emissions. (FAC

22  ¶¶ 15-23, 48.) Plaintiff does not, however, allege that her stove caused or worsened

23  her own respiratory issues. (*Id.*) Moreover, Plaintiff's own sources show there is ***no***

24  ***scientifically reliable evidence of a causal connection*** between gas range emissions

25

26

1    and adverse health impacts. *See supra* pages 2–4. Rather, Plaintiff's sources reflect

2    ***uncertainty regarding whether any association even exists*** between the two. *Id.*

3              "[W]hen economic loss is predicated solely on how a product functions, and

4    the product has not malfunctioned . . . something more is required than simply

5    alleging an overpayment for a 'defective' product." *Cahen v. Toyota Motor Corp.*,

6    147 F. Supp. 3d 955, 970 (N.D. Cal. 2015), *aff'd*, 717 F. App'x 720 (9th Cir. 2017).

7    Federal courts regularly find that conclusory allegations of economic loss that are

8    based on an underlying risk that is itself speculative do not plausibly plead "something

9    more" necessary for standing. *See e.g., Herrington v. Johnson & Johnson Consumer*

10   *Cos., Inc.*, No. C 09-1597, 2010 WL 3448531, at *4-6 (N.D. Cal. Sept. 1, 2010)

11   (allegation plaintiffs would not have purchased products had they known of potential

12   carcinogens was insufficient to establish standing or damages absent plausible

13   showing products were unfit for use); *Cahen,* 147 F. Supp. 3d at 970-71 (finding

14   alleged economic injury from purchase of vehicles equipped with technology

15   allegedly susceptible to hacking by third parties was insufficient for standing because

16   "the alleged economic injury rest[ed] solely upon the existence of a speculative risk

17   of future harm") (collecting cases); *Papasan v. Dometic Corp.*, No. 16-CV-02117-

18   HSG, 2017 WL 4865602, at *5–7 (N.D. Cal. Oct. 27, 2017) (finding conclusory

19   allegation that plaintiff overpaid for defective refrigerator did not create standing

20   where "alleged economic injury, as currently pled, rests only upon a speculative risk

21   of future harm" that gas would leak from refrigerator, creating fire hazard).

22             In sum, Plaintiff lacks both Article III and statutory standing because she does

23   not allege that her gas range has malfunctioned and her claimed economic injury is

24   premised solely on the speculative and unproven risk of future harm from gas stove

25                                                        19

26

1   emissions.

2       Plaintiff's failure to allege any concrete injury is likewise fatal to her remaining

3   implied warranty and common law fraudulent omission claims. *See Gutierrez v.*

4   *Carmax Auto Superstore California*, 248 Cal.Rpt.3d 61, 74-75 (Cal. Ct. App. 2018)

5   ("Stating a complete cause of action for a breach of the Song-Beverly Consumer

6   Warranty Act's implied warranty of merchantability also requires the plaintiff to

7   allege facts establishing the generic elements of causation and harm."); *White v. FCA*

8   *US LLC*, No. 22-CV-00954-BLF, 2022 WL 3370791, at *6 (N.D. Cal. Aug. 16, 2022)

9   (elements of fraudulent omission claim include "resulting damages").

10       **B.**    **Plaintiff Lacks Standing To Assert Other State Laws**

11       Plaintiff lacks standing to assert a claim based on the law of a state where she

12   neither resided nor suffered injury. *Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d

13   1058, 1082-83 (N.D. Cal. 2014). "Courts routinely dismiss claims where no plaintiff

14   is alleged to reside in a state whose laws the class seeks to enforce." *Corcoran v. CVS*

15   *Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) (quoting *In re Aftermarket*

16   *Auto. Lighting Prod. Antitrust Litig.*, No. 09-MDL-2007, 2009 WL 9502003, at *6

17   (C.D. Cal. July 6, 2009)) (collecting cases).

18       Plaintiff is a California resident who purchased her gas stove in California.

19   (FAC ¶¶ 5, 10, 46, 54.) Plaintiff asserts putative class claims under the laws of five

20   other states: Connecticut, Illinois, Maryland, Missouri, and New York. *(Id.* ¶¶ 60,

21   121.) Each of those statutes requires that the alleged violation have a substantial

22   connection to the state. *See Peterson v. Wells Fargo Bank, N.A.*, No. 3:20-CV-781,

23   2022 WL 972415, at *11 (D. Conn. Mar. 31, 2022); *BCBSM, Inc. v. Walgreen Co.*,

24   512 F. Supp. 3d 837, 856 (N.D. Ill. 2021); *Elyazidi v. SunTrust Bank*, No. CIV.A.

25    

                                       20

26

DKC 13-2204, 2014 WL 824129, at *8 (D. Md. Feb. 28, 2014), *aff'd*, 780 F.3d 227 (4th Cir. 2015); *Barker v. Nestle Purina PetCare Co.*, 601 F. Supp. 3d 464, 469 (E.D. Mo. 2022); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E. 2d 1190, 1195 (N.Y. 2002). Yet Plaintiff does not allege conduct or events concerning any of those jurisdictions. Nor does Plaintiff allege that Whirlpool has a substantial connection to any of those states, noting that Whirlpool is a "Delaware corporation with a principal place of business in Benton Harbor, Michigan." (FAC ¶ 7.) Count V, which asserts claims under these other state laws, should therefore be dismissed.

## III.  PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED

Plaintiff's claims must also be dismissed because the Energy Policy and Conservation Act ("EPCA") preempts them in that they seek to regulate and reduce natural gas use in kitchen stoves. The EPCA provides a comprehensive approach to federal energy policy, including test procedures, labeling, and energy usage standards for consumer household appliances. *See* 42 U.S.C. §§ 6291–6309. "The Supreme Court has made clear that Congress may indicate its intent to displace state law through express language." *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010).

### A.    The Ninth Circuit Recognizes EPCA's Express Preemption

EPCA expressly "supersedes any State regulation insofar as such State regulation provides at any time for the disclosure of information with respect to any measure of energy consumption . . . of any covered product" and "no State regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered product shall be effective with respect to such covered product" after the EPCA's enaction. *See* 42 U.S.C. § 6297 (a)-(b). In other words, "once a federal energy conservation standard becomes effective for a covered product, 'no State regulation

concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product,' unless the regulation meets one of several categories not relevant here." *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278, 2023 WL 2962921, at *4 (9th Cir. Apr. 17, 2023) (citation omitted). "It is without dispute" that "State regulation" as defined by EPCA encompasses state laws, regulations, and common law. *See Jurgensen v. Felix Storch, Inc.*, No. 12 Civ. 1201, 2012 WL 2354247, at *2 (S.D.N.Y. June 14, 2012). EPCA defines "energy" to include "fossil fuels," such as natural gas, and "energy use" as "the quantity of energy directly consumed by a consumer product at point of use." 42 U.S.C. § 6291(3)-(4). Covered consumer products includes "kitchen ranges and ovens." *Id.* §§ 6291(1)-(2), 6292(a)(10).

The Ninth Circuit recently found the EPCA preempted a local building code prohibiting the installation of natural gas piping in new buildings in *California Restaurant Association v. City of Berkley*, 65 F.4th 1045, 48 (9th Cir. 2023). The Ninth Circuit, focusing on EPCA's plain meaning, held that Congress intended to "expand preemption beyond direct or facial regulations of covered appliances" to include "any state regulation concerning 'energy use' and 'energy efficiency' of the covered product." *Id*. at 1050-54. As the Ninth Circuit explained, this includes state laws that regulate "'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are used," such as a "total ban" from using natural gas appliances. *Id*. This ruling controls the outcome here.

**B.    EPCA Preempts Plaintiff's Attempt To Regulate Natural Gas Use**

EPCA's preemption provision encompasses all of Plaintiff's state-law claims which, at their core, seek to regulate and reduce the use of natural gas in kitchen

ranges and ovens in two ways.

First, Plaintiff alleges Whirlpool must label its stoves with warnings that the products' use of natural gas is unsafe. The obvious effect of which is to regulate and substantially reduce natural gas use in covered products by encouraging consumers to choose an electric option or to limit their gas use. (*See* FAC ¶¶ 34-35, 53, 82, 88.)

Second, Plaintiff alleges that to avoid liability, Whirlpool must use "alternative gas stove designs" to reduce emissions, but does not plausibly allege that it is currently feasible to reduce emissions except by reducing consumption of natural gas and increasing efficiency. (*Id*. ¶¶ 31, 36, 53.) For example, Plaintiff alleges Whirlpool could have used a "flame insert" to cut NOx emissions, but ignores that her own source explained that this experimental technique of ***reducing NOx emissions significantly increased carbon monoxide ("CO") emissions*** and was not yet tested for durability or cleanability—making this not a viable option for lowering emissions. *See* Janet Raloff, *Cleaner Cooking with Gas*, 125 Science News, 28, 28 (Jan. 14, 1984) (Decl. Ex. G, quoted at FAC ¶ 31 n.39).

Alternatively, Plaintiff alleges Whirlpool should have adopted experimental "powered infrared gas-range burner" technology that "emitted 40% less nitrogen oxides" by "consum[ing] about ***40% less natural gas*** to reach cooking temperatures." (FAC ¶ 31 (emphasis added).) She alleges no other options. In short, Plaintiff seeks to use state laws to force the manufacturers of covered gas appliances, like Whirlpool, to reduce emissions by redesigning the appliances to reduce "the quantity of energy [(*i.e.*, natural gas)] directly consumed by a [range] at point of use." 42 U.S.C. § 6291(4). Such claims "wade[] into a domain preempted by Congress" and must be dismissed. *Cal. Rest. Ass'n*, 65 F.4th at 1048.

## IV.    PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM FAILS

Plaintiff's implied warranty claims fail because she alleges no facts showing that her stove was unmerchantable.[4] To show unmerchantability, a plaintiff must allege a defect so severe that it "drastically undermine[s] the ordinary operation of the [product]." *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013); *see also Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010). "[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. Ct. App. 2003).

Plaintiff alleges that "the only intended use for Defendant's Products is for cooking inside the home" but that the alleged "defect" rendered the stove "unfit" for cooking. (FAC ¶¶ 14, 132.) Plaintiff has not, however, alleged that her stove failed to perform as intended, or at all, or even that she has stopped using her stove. The authorities she cites concerning the uncertainty around the health effects of gas stoves certainly do not "***drastically undermine the ordinary operation***" of her stove as the law requires. *Troup*, 545 Fed. App'x at 669 (emphasis added). This is fatal to both Plaintiff's U.C.C. and Song-Beverly Act claims for breach of implied warranty of merchantability (Counts IV and VI). *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) (explaining Song-Beverly Act and U.C.C. apply same standard to warranty claims).

---

[4] As noted in the LR 7-3 certificate, Plaintiff concedes her claim for breach of the implied warranty of fitness for a particular purpose, and Whirlpool therefore does not address those allegations here.

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

## V.     <u>PLAINTIFF'S MISREPRESENTATION AND OMISSION CLAIMS ARE INADEQUATE</u>

Plaintiff alleges claims for violations of the UCL, FAL, CLRA, state consumer protection statutes, and common law fraudulent omission (Counts I-III, V, and VII). These claims fail for the following reasons: (1) her allegations do not satisfy Federal Rule of Civil Procedure 9; (2) she has not shown Whirlpool was aware of the alleged defect; (3) she has not shown a duty to disclose the allegedly omitted information; (4) the economic loss rule bars fraudulent omissions; and (5) FAL claims cannot be based on omissions.

### A.     Plaintiff Fails To Satisfy Rule 9's Heightened Pleading Standard

Rule 9(b) applies to all claims that are "grounded" in or "sound in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009. The above claims are grounded in allegations that Whirlpool intentionally misled consumers by selling products with a known, concealed defect and are thus subject to Rule 9(b). (*See* FAC ¶¶ 35, 36, 73, 82, 88, 100, 120, 146, 148); *see e.g., In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (applying Rule 9(b) to UCL, CLRA, and FAL claims based on alleged concealment of a product defect).

Plaintiff must therefore allege ***with particularity*** the time, place, and content of Whirlpool's alleged misrepresentations or omissions, along with facts demonstrating her reliance. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). But despite vague allegations of "misrepresentations and omissions," (FAC ¶¶ 84, 90, 124), Plaintiff fails to identify *any* affirmative representation or misrepresentation by Whirlpool about the stove's safety or emissions, let alone when and where she saw the statement to support reliance. Similarly, Plaintiff alleges Whirlpool actively

concealed the defect, (*id.* ¶¶ 35-36), without identifying any affirmative actions on Whirlpool's part, let alone who took the action and when. Such conclusory allegations do not satisfy Rule 8, let alone Rule 9(b).

### B.   Plaintiff Fails To Plead That Whirlpool Knew Of The Alleged Defect

To state a claim for failing to disclose a defect, Plaintiff must plausibly allege the manufacturer knew of the defect at the time of sale, *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017). Plaintiff asserts that Whirlpool was "aware of the fact that its [p]roducts emit harmful pollutants" and "that use of gas stoves increases the rates of respiratory illness," because Whirlpool "monitors and keeps track of research on the health effects of its products. This is diligence that large companies like Defendant routinely do when selling a consumer product." (FAC ¶¶ 29-30.)

Plaintiff's amended pleading points to statements on Whirlpool's website that it has an enterprise risk management process that monitors "industry trends, regulatory developments, and emerging issues." (*Id.* ¶¶ 29-30.) Plaintiff speculates that Whirlpool would have tracked research on gas stove emissions out of concern that North America would adopt regulations similar to the European Union's 2016 regulation that gas appliances "shall be so designed and constructed that, when normally used, they do not cause a concentration of ***carbon monoxide*** or other substances harmful to health, such as they would be likely to present a danger to the health of persons and domestic animals exposed." (*Id.* ¶ 30 (emphasis added).) Plaintiff does not allege, however, that this European regulation—specific to only carbon monoxide—has ever directed manufacturers to meet any other emissions

limits. This case is not about carbon monoxide, and Plaintiff's conclusory allegations do not satisfy the Rule 9(b) pleading standard nor even Rule 8's relaxed standard.

First, Plaintiff cannot base a fraud claim on the assumption that Whirlpool was aware of third-party sources. *See e.g., Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-cv-02941, 2017 WL 86033, at *9 (N.D. Cal. Jan. 10, 2017) (rejecting reliance on complaints on third-party website to show knowledge); *Wilson v. Hyundai Motor Am.*, No. 822CV00771, 2023 WL 3025376, at *7 (C.D. Cal. Mar. 14, 2023) ("'[P]laintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss,' not that a defendant could or should have been aware of the defect.") (quoting *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1145 (9th Cir. 2012)). This is especially true where, as here, none of the research references Whirlpool, its particular products, or any of Whirlpool's testing of those products. *See e.g., Hauck v. Advanced Micro Devices, Inc*., No. 18-cv-00447, 2019 WL 1493356, at *12 (N.D. Cal. Apr. 4, 2019) (dismissing omission claims because "vague, sweeping statements about industry research" regarding security risks for microchips did not show defendant's pre-sale knowledge of risk in its own microchips); *Ahern v. Apple Inc*., 411 F. Supp. 3d 541, 565–66 (N.D. Cal. 2019) (holding that "even under Rule 8's relaxed pleading standard," allegations based on industry research and knowledge where plaintiff identified no statement from defendant showing its awareness of the issue and applicability to its products).

Second, the majority of articles Plaintiff cites were published after she purchased her stove in September 2022. (FAC ¶ 46.). Therefore, she cannot rely upon those articles to demonstrate Whirlpool knew of the alleged defect at the time of the

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

1   sale. (*Id.* ¶ 1 n.1-3, ¶15 n.6-7, ¶16 n.9, ¶17 n.11, ¶18 n.14, 17, ¶25 n.26, ¶26 n.27-28,

2   ¶28 n.30, ¶30 n.36, ¶31 n.37-38, ¶41 n.44-48 (citing articles published after Plaintiff's

3   purchase)); *see, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Practices*

4   *Litig.*, No. 16-cv-06391, 2018 WL 1576457, at *3 (N.D. Cal. Mar. 30, 2018) (online

5   reports that post-dated Plaintiff's purchases cannot establish knowledge).

6          Third, even assuming Whirlpool had analyzed the sources identified in the

7   Amended Complaint that were published before Plaintiff's purchase, these would not

8   establish Whirlpool's knowledge of a defect in its own gas ovens that presented a

9   specific health risk. Rather, these sources discuss ongoing and inconclusive research

10  surrounding potential health risks of the byproducts of gas combustion. See *supra*

11  pages 2-4 (showing that sources incorporated into Amended Complaint recognize

12  evidence of emissions risk does not show causation and is inconsistent in showing

13  any association). The lack of clear evidence for gas stove emissions being dangerous

14  is underscored by the Complaint's allegations that U.S. agencies have been

15  considering whether to change regulation of gas appliance emissions since 1983 and

16  have not done so. (FAC ¶ 30 & n.36.) Plaintiff does not allege Whirlpool has access

17  to evidence of emission risks the U.S. agencies do not. Rather, she suggests that

18  manufacturers must be more cautious than U.S. agencies when monitoring and

19  interpreting third-party research, including the agencies' own reports.

20         Plaintiff thus asks this Court to hold that every manufacturer must monitor each

21  and every article published that ***might be*** relevant to the health or safety of its products

22  regardless of whether the publication actually mentions or references its products.

23  And, that when those publications conflict with one another, as with the studies on

24  gas stove emissions, the manufacturer must go further than regulators to either warn

25

26

1   consumers about hypothetical and uncertain risks or warn consumers of the existence

2   of debate about potential risks. Such a requirement finds no support in the law and

3   would result in confusing and contradicting product disclosures.

4        Because Plaintiff has failed to adequately plead any of the requirements for

5   fraud-based claims under Rule 9(b) these causes of actions should be dismissed.

6   **C.    Plaintiff Has Not Established Whirlpool Had A Duty To Disclose**

7        Additionally, even assuming Plaintiff adequately alleged pre-sale knowledge,

8   Plaintiff's claims fail because she has not shown that Whirlpool had any duty to

9   disclose the allegedly omitted information. "Omissions may be the basis of claims

10  under California consumer protection laws, but to be actionable the omission must be

11  contrary to a representation actually made by the defendant, or an omission of a fact

12  the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th

13  Cir. 2018) (internal quotation marks and citation omitted).

14       As relevant here, the following can give rise to a duty to disclose under

15  California law: "when the defendant has exclusive knowledge of material facts not

16  known or reasonably accessible to the plaintiff; … when the defendant actively

17  conceals a material fact from the plaintiff; and … when the defendant makes partial

18  representations that are misleading because some other material fact has not been

19  disclosed." *Hodsdon*, 891 F.3d at 862 (quoting *Collins v. eMachines, Inc.*, 202

20  Cal.App.4th 249, 134 (Cal. Ct. App. 2011). In addition, for the omission of an alleged

21  product defect to be "material," plaintiff must plausibly allege it "caused an

22  unreasonable safety hazard." *Wilson*, 668 F.3d at 1142–43. Plaintiff has not plausibly

23  pled any of these.

24       **No exclusive knowledge**. Plaintiff cannot demonstrate that Whirlpool had

25

26

exclusive knowledge, because she relies entirely upon public reports and media articles to support her gas emissions theories. (*See* FAC ¶¶ 15–31); *see, e.g.*, *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1087 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018) (dismissing omission claim where complaint's own allegations showed information was publicly available); *In re NJOY, Inc. Consumer Class Action Litig.*, No. 14-00428, 2015 WL 12732461, at *16 (C.D. Cal. 2015) (plaintiffs' reliance on publicly-available FDA study regarding toxins in e-cigarettes undermined claim of exclusive knowledge) (collecting cases); *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-cv-1345, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) (rejecting duty based on exclusive knowledge where "Plaintiffs had access to numerous publicly available scientific publications and other widely disseminated articles . . . regarding the presence of contaminants in talc products.").

**No active concealment**. The Amended Complaint is devoid of any facts to support her conclusory statement that Whirlpool actively concealed any facts from the public. (*See* FAC ¶¶ 35 (stating, without any supporting allegations, that "Defendant knew of the defect, but actively concealed it.").) "To state a claim for active concealment, [a] plaintiff[] must plead more than an omission; rather, [she] must plead affirmative acts of concealment; e.g., that the defendant sought to suppress information in the public domain or obscure the consumers' ability to discover it." *Milman v. FCA U.S., LLC*, No. SACV 18-00686, 2018 WL 5867481, at *11 (C.D. Cal. Aug. 30, 2018) (internal quotation marks and citation omitted). "[M]erely failing to disclose a known defect is insufficient to amount to affirmative acts of concealment necessary to establish a duty to disclose." *Kahn v. FCA US LLC*, No. 2:19-cv-00127, 2019 WL 3955386, at *5 (C.D. Cal. Aug. 2, 2019).

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

**No misrepresentations**. Plaintiff alleges Whirlpool made partial representations that are misleading because it warned about "other" dangers, such as fire and tipping risks, without warning about risks related to gas emissions. (*See e.g.*, FAC ¶¶ 36-39.) Those other warnings in no way relate to emissions or air quality, however, and therefore do not qualify as a partial representation that would mislead consumers about the alleged defect. *See Tietsworth,* 2009 WL 3320486, at *4 (finding statements unrelated to alleged defect were not partial representations giving rise to duty to disclose).

**No unreasonable safety hazard**. Plaintiff's omission claim fails for the independent reason that she has not plausibly alleged an unreasonable safety hazard as required to establish a duty to disclose. *See Wilson*, 668 F.3d at 1142–43; s*ee supra* pages 1–4 and § II.A. Plaintiff's own sources provide that "evidence for a relationship between gas cooking (and indoor NO2) and asthma prevalence or asthma symptoms was ***inconsistent***" and that "the current evidence was ***insufficient to support causality***." WHO Report (Decl. Ex. B   at 76, cited at FAC ¶ 21 n.20) (emphasis added). Further, the "risk associated with well-vented gas cookers that are correctly installed and maintained, would appear to be minimal." *Id*. This is far from the "unreasonable safety hazard" required to establish a duty to disclose here.

**D.   The Economic Loss Rule Bars Plaintiff's Fraudulent Omission Claim**

Plaintiff's fraudulent omission claim also fails under the economic loss rule, which "bar[s] a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form of *physical harm* (i.e., personal injury or property damage)." *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 848 (C.D. Cal. 2020) (quoting *North American Chemical Co. v.*

*Superior Court*, 59 Cal.App.4th 764, 777 (1997)). Here, Plaintiff alleges a speculative health risk, but does not allege any physical injury or property damage. Her fraudulent omission claim should therefore be dismissed. *See id.* at 850 n.5 (collecting cases applying rule to fraudulent omission claims).

### E.    Plaintiff's FAL Claim Cannot Be Based On Omission

The Court should also dismiss Plaintiff's FAL claims because they are improperly based on Whirlpool's alleged omission, not any affirmative statement. California's FAL prohibits "*mak[ing] or disseminat[ing] . . . any statement . . .* which is untrue or misleading, and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading . . . " Cal. Bus. & Prof. Code §17500 (emphasis added). Because the FAL regulates the making or disseminating of a statement, courts commonly hold that a plaintiff asserting that a company omitted a purportedly material fact in its advertisements or labeling has not stated a claim under the FAL. *Hodsdon v. Mars, Inc.,* 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) ("When the crux of a plaintiff's FAL claim is that the defendant did not make any statement at all about a subject, then a claim under the FAL may not advance"). The same result should follow here.

## VI.    PLAINTIFF'S UCL CLAIM FAILS IN ITS ENTIRETY

Plaintiff asserts UCL claims under the fraudulent, unlawful, and unfair prongs. (FAC ¶¶ 73-80.) Plaintiff's failure to plausibly allege that Whirlpool acted fraudulently, (*see* Section V), is fatal to both her fraud and unfair prong claims. *See Hadley v. Kellogg Sales Co.,* 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017). In addition, the failure of Plaintiff's CLRA, FAL, and Song-Beverly Act claims, (*see* Sections IV and V), is fatal to her UCL unlawful prong claim. *Id.* at 1094 (UCL

1    unlawful claim fails if plaintiff "cannot state a claim under the predicate law").

2    **VII.   <u>PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF FAIL BECAUSE</u>**

3    **<u>THERE IS NO REAL THREAT OF REPEAT INJURY</u>**

4         To obtain injunctive relief, Plaintiff must also allege "concrete and

5    particularized legal harm, coupled with a sufficient likelihood that [she] will again be

6    wronged in a similar way." *Bates v. United Parcel Serv., Inc*., 511 F.3d 974, 985–86

7    (9th Cir. 2007) (quotations omitted). "As to the second inquiry, [Plaintiff] must

8    establish a 'real and immediate threat of repeated injury.'" *Id*. (quoting *O'Shea v.*

9    *Littleton,* 414 U.S. 488, 496 (1974)).

10        Plaintiff's allegation that she "would purchase Defendant's Products in the

11   future if the Product was redesigned to avoid emitting harmful pollutants," (FAC

12   ¶ 53), does not show a real and immediate threat of repeat injury. Plaintiff is now

13   aware that all gas stoves produce gas combustion emissions, that electric ranges do

14   not, and that inconsistent and inconclusive information about the health risks of

15   emissions is publicly available. She also alleges she is in the care of a healthcare

16   professional who has prescribed her two inhalers for her respiratory issues. (*Id*. ¶ 48.)

17   It is thus not plausible that the absence of emissions warnings on gas ranges in the

18   future will mislead Plaintiff or prevent her from shopping for an alternative. The

19   Court should therefore dismiss Plaintiff's request for injunctive relief.

20   **VIII.  <u>PLAINTIFF'S UNJUST ENRICHMENT CLAIMS FAIL</u>**

21        In California, unjust enrichment claims sound in quasi-contract, and when an

22   unjust enrichment claim mirrors other statutory or tort claims, it rises or falls with the

23   "underlying, substantive claims." *See Lusson v. Apple, Inc.*, No. 16-cv-00705, 2016

24   WL 10932723, at *3 (N.D. Cal. June 20, 2016. Here, Plaintiff's unjust enrichment

25

26

claim fails because it is predicated on the same theory as her failed fraud-based claims. (*See* Section V.)

* * *

## <u>CONCLUSION</u>

For the foregoing reasons, Whirlpool respectfully requests that this court dismiss Plaintiff's First Amended Complaint in its entirety.

Dated: October 5, 2023                 WHEELER TRIGG O'DONNELL LLP

By:  */s/ Andrew M. Unthank*
     Andrew M. Unthank (*pro hac vice*)
     Michael T. Williams (*pro hac vice*)
     Natalie R. Colao (*pro hac vice*)

     DYKEMA GOSSETT LLP

     Tamara A. Bush

     Attorneys for Defendant
     WHIRLPOOL CORPORATION

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Whirlpool certifies that this brief contains 6197 words, which

 X  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated:  October 5, 2023

By:  */s/ Andrew M. Unthank*

MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT